The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> KEVIN DONALD KERFOOT, <br><br> Defendant. | NO. CR06-252Z <br><br> UNITED STATES' SENTENCING MEMORANDUM |

## I. INTRODUCTION.

Defendant Kevin Donald Kerfoot was the leader of a massive cross-border drug smuggling operation in 2005. Kerfoot directed others to exchange 41 kilograms of cocaine (bound for Canada) for 20 pounds of MDMA/ecstasy (bound for the U.S.). Unfortunately, his subordinates were caught and admitted that Kerfoot was their leader.

The government indicted Kerfoot and began extradition proceedings in Canada. Kerfoot fought extradition for almost ten years. He was of course entitled to litigate the extradition matter in Canada. However, he was not entitled to obstruct justice in doing so – and he clearly did. Kerfoot repeatedly suborned perjury, and likely ordered the attempted murder of one cooperating witness. His efforts were ultimately unsuccessful, and he now comes to Court for sentencing.

U.S. Sentencing Memo - 1
*Kerfoot*, CR06-252Z

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Unlike many defendants who come before this Court, Kerfoot appears to have had every advantage growing up. His parents, by his own account, were loving and provided for him. His brother is a wildly successful businessperson, who also provided Kerfoot with many opportunities to make a lawful living. Kerfoot appears to have willfully chosen a life of crime.

The government joins the Probation Office in recommending a sentence of 156 months, the top of the agreed-upon range contained in the Rule 11(c)(1)(B) plea agreement. While lengthy, it is well below the otherwise applicable Guideline range of 262-327 months.

## II. BACKGROUND.

A. **The Smuggling Operation and Original Prosecution.**

On October 4, 2005, local law enforcement received a tip that Randall Canupp was traveling northbound on I-5 with more than 40 kilograms of cocaine. Canupp was stopped by the Washington State Patrol, confessed to having the cocaine and agreed to cooperate. During a post-arrest interview, Canupp told agents he was working for a Canadian named Kevin Kerfoot, and was supposed to deliver the cocaine to a marina in exchange for a "package" and a phone number.

Of note, Canupp and Kerfoot had been arrested together for smuggling marijuana into the United States from Canada in the late 1990s. This is the same conviction referred to in Kerfoot's PSR, ¶ 41. During the interview, Canupp received several calls from Kerfoot on his cell phone. Some of these calls with Kerfoot were recorded, although the audio quality was quite poor.

Canupp's cooperation led agents to the next step in the chain, R.P.,[1] a Canadian citizen. Undercover agents, along with Canupp, conducted a controlled delivery of the cocaine to R.P. at a marina near Sandy Point in Whatcom County. R.P. in turn gave the

---

[1] R.P. is no longer using this name. He is nonetheless referred to only by his initials here because of past threats against him and because he is the victim of a subsequent crime, as set forth below.

U.S. Sentencing Memo - 2
*Kerfoot*, CR06-252Z

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

agents a bag containing some 24,063 tablets of methylenedioxymethamphetamine (MDMA), commonly known as "ecstasy," weighing approximately 20 pounds.

R.P. was arrested shortly after midnight on October 5, 2005 and likewise agreed to cooperate. During his post-arrest interview, R.P. confirmed that he also was working for Kerfoot. R.P. stated he had experienced engine trouble with his boat on the way to Canada. He turned over a phone number for the person who was ultimately supposed to receive the ecstasy, and stated he had called that number earlier to tell the person on the other end that the deal was running late.

Canupp, under the agents' direction, placed a call to that number. The man who answered the phone was co-conspirator Anthony D'Aloia. There has been some dispute as to what was said during the call – D'Aloia either said that he had already "been" called (which would be consistent with receiving a call earlier from R.P.), or that "Ben" (a possible reference to another co-conspirator, Ben Long) was going to take care of it.

Shortly after that conversation, Ben Long appeared on the scene and was arrested.[2]

R.P. then called D'Aloia again at the same telephone number under agents' supervision. During these conversations, R.P. arranged to meet D'Aloia at the Hampton Inn in Bellingham, Washington around 4:00 a.m. D'Aloia told R.P. that he would be driving a white SUV. Agents, posing as R.P. and his associates, drove to the Hampton Inn parking lot. D'Aloia arrived as promised, took delivery of the ecstasy, and was also arrested.[3]

All four men were charged together in CR05-396JCC. In post-charging interviews, the cooperating defendants all confirmed, again, that Kerfoot was the leader of the organization, and each corroborated important details of their separate accounts. All four defendants ultimately pleaded guilty, and several agreed to cooperate. Of note, in their respective plea agreements – which are of course entered into under penalty of

---

[2] Long declined to cooperate. However, in a later interview, Long did confirm that Kerfoot was the leader/organizer of the smuggling scheme. Long claimed that he was told that they were only smuggling marijuana, a claim later corroborated by Canupp and R.P..
[3] D'Aloia declined to cooperate.

U.S. Sentencing Memo - 3
*Kerfoot*, CR06-252Z

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

perjury – each cooperating defendant admitted to working for Kerfoot. R.P.'s Plea Agreement is filed herewith under seal as *Exhibit 1*.

Long was allowed to plead guilty to conspiracy to distribute marijuana, and was sentenced to 37 months. Canupp was sentenced to 66 months and R.P. to 54 months for their roles in the cocaine/MDMA conspiracy. D'Aloia was sentenced to 78 months.

**B.      Indictment of Kerfoot – Extradition and Obstruction of Justice.**

Based on the information provided by his co-conspirators, as well as other corroborating information, the government obtained the present indictment against Kerfoot on July 20, 2006 and submitted a request for a Provisional Arrest Warrant to Canada. Kerfoot was arrested in Canada pursuant to the PAW on March 28, 2007 and released on bond. The government then submitted a formal extradition request in May of that same year, and extradition proceedings formally began in Canada on June 18, 2007.

Kerfoot then vigorously fought extradition for almost ten years. Based on information received from Canada, he repeatedly switched counsel, likely to obtain continuances on that basis. More important, he repeatedly submitted false information to the Canadian court system, including misrepresenting conversations his counsel had with U.S. officials. Defendant's dilatory tactics ultimately crossed the line into obstruction of justice. This included Kerfoot's subornation of perjury and likely the attempted murder of the same witness.

Kerfoot was first ordered committed for extradition by the Canadian trial court judge in August of 2009, and appealed. While that appeal was pending, R.P. finished his 54-month sentence and was returned to Canada. Once he did, he fell back into his criminal association with Kerfoot, who was out on bond.

In May of 2010, Kerfoot's Canadian lawyers prepared and submitted an affidavit signed by R.P. in the extradition appeal in Canada. A copy of this first affidavit is attached as *Exhibit 2*. In the affidavit, R.P. flatly contradicted his prior statements about Kerfoot to the United States, including in his plea agreement. He claims that he

U.S. Sentencing Memo - 4
*Kerfoot*, CR06-252Z

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

fabricated the information about Kerfoot's involvement under pressure from the government; that he and Canupp together decided to frame Kerfoot under pressure; and that Kerfoot was not involved in any way.[4]

This first false affidavit had the desired effect. Kerfoot had been ordered committed for extradition by the trial court judge in August of 2009, and had appealed. Based in part on R.P.'s affidavit, the Canadian appellate Court found that the case had substantially changed and remanded the matter back to the trial court level in January of 2011.

The Canadian government sent back inquiries to the United States, asking how it could proceed with prosecuting Kerfoot in light of this recantation. The U.S. government responded that it still planned to call R.P. (either in person or by perpetuation deposition if R.P. failed to appear); that it is the trial jury's role to sort out which statements were true and which were false; and that it was still confident that it would be able to obtain a conviction. The Canadian courts ultimately accepted this response, but this government-to-government back and forth was part of the pattern of delay in obtaining Kerfoot's extradition.

In response, Kerfoot's lawyers prepared and filed a second affidavit for R.P. in December of 2013. A copy is attached as *Exhibit 3*. In that affidavit, R.P. again reiterated that he had falsely implicated Kerfoot. He also stated that he would not testify against Kerfoot under any circumstances.

This affidavit was also ultimately unavailing. Kerfoot was again ordered committed for extradition in 2014 and again appealed. In July of 2016, the intermediate Canadian Court of Appeals rejected his claims. Defendant appealed to the Canadian Supreme Court; however, much like in our system, such an appeal was discretionary and had little chance of being accepted.

---

[4] During the protracted proceedings, Canupp had died of natural causes. Kerfoot's Canadian counsel also submitted an affidavit claiming that Canupp was also about to recant his testimony about Kerfoot's involvement, but died before he was able to do so.

U.S. Sentencing Memo - 5
*Kerfoot*, CR06-252Z

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

It appears that Kerfoot then decided to have R.P. killed in a last-ditch attempt to silence him before Kerfoot's extradition could be completed. According to a later interview, R.P. had fallen back into drug use and drug trafficking, including with Kerfoot. On August 2, 2016 – approximately two weeks after Kerfoot lost his intermediate appeal of his extradition - Kerfoot asked R.P. to go meet with another drug trafficker to pick up narcotics in a parking lot in British Columbia. While R.P. was waiting in his vehicle, a man on a bicycle pulled up next to him and shot him 7 – 8 times with semi-automatic pistol equipped with a silencer.

Amazingly, R.P. survived the shooting. He managed to put his vehicle in gear and run down the shooter before he could reload. The shooter also survived and is pending trial in Canada for the attempted murder. According to the RCMP, he has refused to make any statement about whom he was working for, and the investigation is ongoing.

R.P. – for lack of a better way of putting it – recanted his recantation after the shooting. U.S. law enforcement conducted a recorded interview with R.P. earlier this year in Canada. R.P. re-affirmed that Kerfoot was the leader of the smuggling operation. He admitted to submitting false sworn testimony in the Canadian extradition proceeding, at Kerfoot's request. He also confirmed that Kerfoot had offered him cash and employment opportunities (including in the drug trafficking business) after his return to Canada in return for R.P.'s signing the two false recantation affidavits. R.P. also said that Kerfoot made a not-so-veiled threat against him if he did not sign the affidavits, as outlined in the PSR at ¶ 26. Finally, R.P. has asked the Court to consider his own victim-impact statement, submitted herewith under seal as *Exhibit 4*.

C.  **Defendant's History and Characteristics.**

As set forth in the Second Revised PSR, Kerfoot has prior convictions in the United States for marijuana distribution and for assault in 1999. PSR ¶ ¶ 41, 42. While quite old, these convictions were just six years before Defendant committed this offense,

U.S. Sentencing Memo - 6
*Kerfoot*, CR06-252Z

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and therefore score. Defendant was also still on supervision for the former case, and obtains two additional points as a result, for a total of six criminal history points.

Kerfoot, age 53, was raised in a close-knit and (to use his term) ideal family. His older brother is a wildly successful businessperson who gave Kerfoot various opportunities to be successful outside of a life of crime. Put another way, there is nothing mitigating in Defendant's background that appears to account for or excuse his behavior in this case.

### III.    GUIDELINE CALCULATION.

The Government concurs with the Probation Office's revised Guideline calculation, as set forth in the Second Revised PSR.

The Base Offense Level (34, based on the combined quantity of cocaine and MDMA) and a four-level leadership increase are undisputed, as is a 3-level downward adjustment for acceptance of responsibility.

The only disputed Guideline provision is a two-level increase for obstruction of justice. The Probation Office has recommended the Court impose that increase, based on two events: (1) Kerfoot's procurement of perjured affidavits from R.P. in the extradition proceeding, and (2) Kerfoot's alleged role in the attempted murder of R.P.

The defense has objected to the obstruction increase. The Court should overrule the objection. Importantly, either event, by itself, would support the obstruction enhancement.

As to the false affidavits submitted by R.P., the defense contends that R.P. submitted the false affidavits "of his own volition" and denies having anything to do with it. This argument is frankly ridiculous. First, R.P. states otherwise. More important, it is clear that R.P. did not draft or file the affidavits. *Kerfoot's own Canadian lawyers did so*, not once but twice, in a fraudulent attempt to delay or forestall extradition. Kerfoot knew the affidavits were false – he cannot now claim otherwise, having plead guilty. He was the sole beneficiary of their falsity, and they were prepared and filed by his own

U.S. Sentencing Memo - 7
*Kerfoot*, CR06-252Z

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

agents. His procurement of perjured testimony is sufficient, by itself, to merit the obstruction increase, regardless of whether the Court concludes that Kerfoot ordered R.P.'s murder.

As to the attempt to kill R.P., the government concedes this is a somewhat closer call. There is presently no direct evidence that Kerfoot ordered the shooting – the shooter, to date, has refused to make any statement. Indeed, if there was direct evidence, either the Canadian or U.S. governments would likely have charged him for that offense.

However, circumstantial evidence does suggest Kerfoot did order the hit. First, the timing is powerful evidence. R.P. was shot just two weeks after Kerfoot's appeal of his extradition order was denied. While he still had a discretionary appeal to the Canadian Supreme Court pending, Kerfoot had to know that was a long-shot at best. Canupp, the other main witness against Kerfoot, had already died of natural causes. Kerfoot doubtless thought that silencing R.P. would make it virtually impossible for the U.S. to obtain a conviction. Second, R.P. and the shooter did not appear to know each other. That, and the use of a silenced pistol, indicates that the shooting was a "professional" hit. Last, but not least, R.P. certainly believes Kerfoot ordered the hit, and his account of the circumstances support that conclusion.

The defense also points out that after the shooting, R.P. allegedly contacted Kerfoot by email and demanded money in return for his continued non-cooperation with law enforcement. What Kerfoot fails to mention is that in said email, R.P. (a) makes it clear that he believes Kerfoot ordered the hit; (b) re-iterates that Kerfoot was guilty of the drug trafficking offense at issue here, and others, contrary to the false affidavits Kerfoot paid R.P. to file. Put another way, this email is wholly consistent with, and supportive of, the fact that Kerfoot attempted to obstruct this prosecution.

Assuming the Court overrules the objection to the obstruction increase, Defendant is Total Offense Level 37 and Criminal History Category III, for an advisory Guideline range of 262 – 327 months. There is a 120-month mandatory minimum and a mandatory

U.S. Sentencing Memo - 8
*Kerfoot*, CR06-252Z

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

five-year term of supervision, despite the fact that Defendant will be excluded from the United States.

## IV. RECOMMENDATION AND JUSTIFICATION.

The government joins the Probation Office in recommending a custodial sentence of 156 months, the bottom of the agreed-upon range in the Plea Agreement. While lengthy, it is well below the bottom the advisory Guideline range. It is also the sentence called for by the factors set forth in 18 U.S.C. § 3553(a).

First, the nature and circumstances of the offense, and the need for the sentence to reflect the seriousness of the offense and impose just punishment call for a lengthy sentence. Defendant was the leader of a massive two-way, cross-border smuggling operation. He organized others to smuggle very large amounts of cocaine from the U.S. into Canada, and MDMA back into the U.S. His aggravated role calls for a significant sanction.

Second, the Defendant's history and characteristics, and the need to protect the public from future crimes by this Defendant, call for a significant sentence. While a Canadian national, Defendant engaged in this conduct after sustaining a prior drug trafficking conviction in the U.S. Indeed, he engaged in this conduct with one of the same co-defendants as in that prior offense (Canupp). He clearly was undeterred by his prior shorter sentence.

Third, unlike many who come before this Court, Defendant had a positive – indeed idyllic – upbringing. He had ample opportunities to be a successful, law-abiding citizen in Canada. Instead, he appears to have made a willful choice to pursue a criminal lifestyle.

Last, but certainly not least, Defendant willfully and repeatedly obstructed justice in this matter. He suborned perjury, not once but twice, in an effort to avoid facing the consequences of his criminal activity. He also likely tried to have a key witness killed to silence him. His obstructive conduct almost worked – if R.P. had died, the government's

U.S. Sentencing Memo - 9
*Kerfoot*, CR06-252Z

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

case would likely have collapsed altogether. The delay, and consequent loss of evidence, certainly would have hurt the government's case at trial.

All of these factors call for a lengthy sentence. The government nonetheless entered into the plea deal before the Court, capping its recommendation well below the Guideline range, for the simple reason that the government had significant litigation risk at trial. Defendant successfully dragged out the extradition proceedings in Canada long enough that one key witness against him died. Another key witness, R.P., falsely recanted his earlier account of Kerfoot's involvement. While R.P. later retracted his statements, his prior inconsistencies would of course have presented a challenge at trial. Under the circumstances, a sentence of 156 months was and is appropriate.

## V. CONCLUSION.

For the reasons set forth above, the United States respectfully recommends a custodial sentence of 156 months, to be followed by five-years of supervised release.

Dated this 20th day of July, 2017.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

*/s/ Vincent T. Lombardi*
VINCENT T. LOMBARDI
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: 206-553-5178
E-mail: vince.lombardi@usdoj.gov

U.S. Sentencing Memo - 10
*Kerfoot*, CR06-252Z

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s).

*s/Karen Wolgamuth*
KAREN WOLGAMUTH
Paralegal
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-5050
FAX:   (206) 553-4440
E-mail: karen.wolgamuth@usdoj.gov

U.S. Sentencing Memo - 11
*Kerfoot*, CR06-252Z

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970